JOURNAL ENTRY AND OPINION.
{¶ 1} The State of Ohio appeals from the order of Judge Eileen A. Gallagher dismissing an indictment against appellee David S. Rowan on one count of escape, in violation of R.C. 2921.34. The State contends that under the current statute, a parolee convicted of a crime prior to 1996, who flees from supervision, is subject to escape laws in effect at the time of such new offense. We affirm.
 {¶ 2} In 1988, Rowan was convicted of aggravated assault and placed on probation. When he violated his probation in 1992, he was given a prison sentence of eighteen months to five years. After his release, another probation violation resulted in the issuance of a capias warrant in 1994, and his return to prison in 1997, to serve his original sentence.
 {¶ 3} Following his parole in May of 1999, Rowan failed to report to his parole officer in November of that year and was indicted on one count of escape, a felony of the third degree in violation of R.C.2921.34.[1] He moved to dismiss the charge, arguing that any punishment for his parole violations was governed by the provisions of R.C. 2967.15, as it existed prior to July 1, 1996, and precluded the application of the escape statute for any such violation. The State countered that the "escape" Rowan committed occurred after all relevant statutes had been changed to include parolees within the class of individuals "detained" by the State and open to an escape indictment for absconding from parole. The judge granted Rowan's motion to dismiss.
 {¶ 4} The State asserts one assignment of error.
 {¶ 5} "Where a Defendant Is Indicted for the Crime of Escape for Failing to Report to His Parole Officer, the Law in Effect at the Time of the Failure to Report Applies And, Therefore, the Trial Court Erred in Granting Defendant-appellee's Motion to Dismiss."
 {¶ 6} It is impossible to fathom how, by enacting R.C. 2967.021 as part of S.B. 2, the General Assembly could have more clearly expressed its intent to keep pre-July 1, 1996 offenders under the provisions of pre S.B. 2, Chapter 2967, for purposes of determining susceptibility to an escape charge, should the offender later abscond from parole.
 {¶ 7} "(A) Chapter 2967. of the Revised Code, as it existed prior to July 1, 1996, applies to a person upon whom a court imposed a term of imprisonment prior to July 1, 1996, and a person upon whom a court, on or after July 1, 1996, and in accordance with law existing prior to July 1, 1996, imposed a term of imprisonment for an offense that was committed prior to July 1, 1996."
 {¶ 8} "(B) Chapter 2967. of the Revised Code, as it exists on and after July 1, 1996, applies to a person upon whom a court imposed a stated prison term for an offense committed on or after July 1, 1996."
 {¶ 9} R.C. 2921.34(A)(1) defines the crime of "escape":
 {¶ 10} "No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."
 {¶ 11} Under R.C. 2967.15(C)(2), as it existed prior to July 1, 1996, "[a] furloughee or any releasee other than a person who is releasedon parole, [hereafter referred to as a "POP"], shock parole, or conditional pardon is considered to be in custody while on furlough or other release, and, if he absconds from supervision, he may be prosecuted for the offense of escape." (emphasis added).[2] Clearly, the legislature intended to exclude from the crime of escape those persons absconding from parole for felonies committed before July 1, 1996, and fix them in time to only those controls and sanctions authorized under pre S.B. 2 Chapter 2967.
 {¶ 12} The confusion that has caused the charge of escape to be made against a POP after July 1, 1996, is the result of a need to clarify and define some provisions of S.B. 2 enactments, a series of amendments and the failure of previous decisions to recognize R.C. 2967.021.
 {¶ 13} Three versions of R.C. 2967.15(C)(2) were passed in rather rapid succession, and made various changes regarding the wording of the section, adding or deleting classes of offenders not susceptible to an escape charge who had been somehow allowed to depart from formal, complete confinement in a prison.[3] All versions included those on parole as outside the reach of an escape indictment for absconding, and reflected that parolees had been excluded from susceptibility to an escape charge in the prior, pre-July 1, 1996 version.[4] Pursuant to R.C. 1.52, the amendments were harmonized to provide:
 {¶ 14} "A furloughee or a releasee other than a person who is released on parole, conditional pardon, or post release control is considered to be in custody while under furlough or other release, and, if the furloughee or releasee absconds from supervision, the furloughee or releasee may be prosecuted for the offense of escape."[5]
 {¶ 15} Only a person under "detention" could commit the offense of escape by breaking it. Prior to, on and after July 1, 1996, R.C.2921.01(E), defined persons considered to be under detention, in relevant part, as those under "* * * supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution other than release on parole or shock probation (R.C. 2947.061).[6] * * * Detention does not include supervision of probation or parole, or constraint incidental to release on bail."[7]
 {¶ 16} Shortly thereafter, with the express intent to create the offense of possessing a deadly weapon while under detention and to redefine detention, an amended R.C. 2921.01(E) defined detained persons, in relevant part, as those under "* * * supervision by an employee of the department of rehabilitation and correction of a person on any type of release from a state correctional institution * * *."[8] While having no effect upon the pre-S.B. 2 offender, it clarified that those eventually eligible for parole and other forms of early release under the new sentencing guidelines would be included under detention and subject to a charge of escape.[9]
 {¶ 17} The problem remained, however, that R.C. 2967.15(C)(2) exempted those persons under post release control, conditional pardon or parole from the offense of escape.[10]
 {¶ 18} Effective March 17, 1998, the General Assembly, as part of Am. S.B. No. 111, amended R.C. 2967.15(C)(2) section to delete the limiting language, so that no S.B. 2 offenders were outside the reach of Ohio's criminal escape statute under the framework of Chapter 2967, specifically governing pardons, reprieve and commutation of sentence, and prisoner release on parole and post-release control.[11]
 {¶ 19} Courts then encountered the question of whether an offender, sentenced for crimes committed before the above changes in Chapters 2921 and 2967, but paroled after one or more changes in the relevant laws may, after violating the terms of his parole, be prosecuted for the crime of escape. In State v. Snell,[12] the First District Court of Appeals held that a parolee convicted of his initial offense prior to July 1, 1996, but committing an act chargeable as an escape after March 18, 1998, may not be charged with escape under current R.C. 2921.34, because "R.C. 2967.021 is clear that the Revised Code shall be applied as it existed prior to Senate Bill 2's amendments to a person imprisoned before July 1, 1996."[13]
 {¶ 20} In State v. Glaude,[14]. the offender was paroled on June 25, 1996, and, by December 12, 1996, began to fail to report to his parole officer and was declared a violator-at-large on March 10, 1997. This court based its determination on State v. Benton,[15] and the interpretation of prospective statutory application. We specifically noted: "Because amended R.C. 2921.01(E) does not control Glaude's parole, under our analysis, it is unnecessary for us to consider alternatively whether that statute conflicts with the former R.C.2967.15(C)(2)."[16]
 {¶ 21} The majority in Glaude, including this writer, however, decided that case without reference to R.C. 2967.021 or the Snell
decision. Had it been otherwise, there would have been no dicta in the opinion indicating that the date of parole would be a determining factor on whether a pre-S.B. 2 parole violator could be charged with escape.
 {¶ 22} In State v. Conyers,[17] the Ohio Supreme Court held that, during the time period between October 4, 1996, and March 18, 1998, R.C. 2921.01(E) defined "detention" to include parole, and accordingly, R.C. 2921.34 applied on its face to parolees, and they were included as persons susceptible to an escape charge for absconding from parole.[18] The court further held, however, that R.C. 2967.15(C)(2) was a special provision which narrowed the application of R.C. 2921.34 by excluding parolees, and thus controlled until May 18, 1998, when R.C.2967.15(C)(2) was amended to remove the parolee exclusion for persons who could be charged with escape for breaking detention.[19] Accordingly, the Supreme Court determined that: "during the period of October 4, 1996 to March 17, 1998, the parolee-exclusion language contained in the special provision of former R.C. 2967.15(C)(2) prevailed as an exception to the general provisions of R.C. 2921.43(A)(1)."[20]
 {¶ 23} Contrary to this court's recent opinion in State v.Goode,[21] nothing in State v. Conyers implies that the Supreme Court would find that persons convicted before July 1, 1996, who violate their parole after March 17, 1998, could be prosecuted for escape. TheConyers decision is very precise in its holding, and leaves open this very question.
 {¶ 24} Since Conyers, several courts of appeal have addressed the pre-S.B. 2 offender escape issue and have upheld the conviction on the theory that the charge is based upon criminal conduct occurring after the statutory amendments, independent of the original crime for which the parolee was initially imprisoned and, as such, the escape conviction is not constitutionally improper as the enforcement of an ex post facto or retroactive law.[22] These decisions, however, fail to mention the impact of R.C. 2967.021 in their analysis of the issue.
 {¶ 25} In State v. Bell, the Seventh Appellate District took the position that because the October 1996 amendment to R.C. 2921.01(E) and the March 1998 amendment to R.C. 2967.15(C)(2) were not part of the Senate Bill 2, enacting R.C. 2967.021, the changes made are not controlled by that section's express delineation of pre- and post-July 1, 1996 crimes.
 {¶ 26} We cannot agree. "We must presume that the General Assembly is aware of previously enacted legislation."[23] If the legislature had wanted to include pre-S.B. 2 offenders within that limited group of post-S.B. 2 offenders eligible for parole and, after March 17, 1998, subject to the charge of escape, it had ample opportunities to do so but did not.
 {¶ 27} An assertion that the valid, straightforward limiting language of R.C. 2967.021 does not govern a later amendment to a subsequent section of the Chapter is certainly creative but contrary to the express ability of the General Assembly to make valid amendments to statutes while restricting application to specific groups of offenders.[24]
 {¶ 28} When the pre-July 1, 1996 R.C. 2967.15(C)(2) and post-S.B. 2 amended R.C. 2921.01(E) conflict, R.C. 2967.15, as a special, limiting provision of R.C. 2921.34, controls.[25]
 {¶ 29} If R.C. 2967.021 presents no conflict with the former or amended R.C. 2967.15(C)(2), and it is not ambiguous, it must be applied as written. If, as suggested by State v. Thompson,[26] the language of R.C. 2967.021 is viewed as ambiguous, it will be construed against the State. "Statutes should be so construed as to give effect to the intention of the legislature, and if possible, render every section and clause effectually operative."[27] R.C. 2967.021 made it clear the legislature wanted only post-July 1, 1996 offenders to be subject to the provisions of S.B. 2, and any later amendments to Chapter 2967 occurring after July 1, 1996. R.C. 2967.021 would be rendered meaningless if a mere amendment to a subsection somehow magically altered its express language.
 {¶ 30} Under R.C. 2967.021, persons imprisoned prior to July 1, 1996, or sentenced for a crime committed prior to that date are frozen in time and, when paroled, are excluded from the crime of escape or any provision under S.B. 2 Chapter 2967.[28]
 {¶ 31} Rowan was convicted in 1988 for his underlying crime, was imprisoned, was placed on parole in 2000 and failed to report to his parole officer. Under the version of R.C. 2967.15(C)(2) in effect on June 30, 1996, he was not in custody or susceptible to a separate charge of escape for absconding from supervision. Rowan, in failing to report to his parole officer, can be charged with a violation of his parole, but nothing more, and the judge's dismissal of the escape indictment was correct.
Judgment affirmed.
FRANK D. CELEBREZZE, JR., J., concurs.
TIMOTHY E. McMONAGLE, P.J., concurs in judgment only with separateconcurring opinion.
[1] Although the indictment originally stated that the offense for which he had been "detained" on parole was a first- or second-degree felony, the judge permitted the State to amend the indictment to reflect the correct degree of the escape felony charged, based on Rowan's original conviction for aggravated assault, a felony of the fourth degree at the time it was committed. See also R.C. 2921.34, mandating that escape is a third-degree felony if the underlying offense for which a parolee is under detention is a third-, fourth- or fifth-degree felony.
[2] R.C. 2967.021, enacted as 146 v. H.B. 4, effective 11-9-95.
[3] 146 v. H.B. 117 notes offenders on parole or pardon as the only excluded categories of releasees, 146 v. S.B. 2, signed into law on August 10, 1995, added offenders on post-release control to the excluded list, 146 v. S. 4, also signed into law on August 10, 1995, added offenders on shock parole or conditional pardon to the excluded list and 146 v. S.B. 269, signed into law on June 28, 1996, deleted those on shock parole from the list, as S.B. 2 repealed R.C. 2967.31, providing for shock parole of inmates in certain circumstances. Each of these laws, as it pertains to R.C. 2967.15(C)(2), became effective on July 1, 1996.
[4] Id.
[5] Effective 7-1-96; See Sec. 7(C), 146 v. S.B. 269, which makes a legislative finding that S.B. 269 shall be the prevailing version where the four versions conflict.
[6] Repealed by H.B. 4 effective 7-1-96. Also, felony probation no longer existed post S.B. 2.
[7] 146 v. S.B. 8, effective 8-23-95.
[8] 146 v. Sub. H.B. 154, effective October 4, 1996.
[9] S.B. 2 enacted R.C. 2929.20, Judicial Release, and R.C. 5120.032, Intensive Prison Programs, while R.C. 2929.51, Modification of Sentence, and R.C. 5120.031, Shock Incarceration, were amended.
[10] Under S.B. 2 the earliest date that those persons eligible for parole could be released was ten years or after 2006.
[11] See Am.Sub.S.B. No. 111, 147 v. S.B. 111. It enacted eleven statues and amended sixty-nine others including R.C. 2967.01, .131, .14, .15, .191, .22, .26, .27 and .28.
[12] (May 14, 1999), Hamilton App. No. C-980588.
[13] Id.
[14] (Sep. 2, 1999), Cuyahoga App. No. 73757.
[15] (1998), 82 Ohio St.3d 316.
[16] Glaude, footnote 3.
[17] 87 Ohio St.3d 246, 1999-Ohio-60, 719 N.E.2d 535.
[18] 87 Ohio St.3d 246, 249, 1999-Ohio-60, 719 N.E.2d 535.
[19] 87 Ohio St.3d 246, 250, 1999-Ohio-60, 719 N.E.2d 535.
[20] Id at 251.
[21] (July 25, 2002), Cuyahoga App. No. 80525, echoing State v.Buckney (Dec. 15, 2000), Champaign App. NO. 2000-CA-9.
[22] State v. Buckney (Dec. 15, 2000), Champaign App. No. 2000-CA-9;State v. McFolley (July 11, 2001), Lorain App. No. 00CA007614, where an R.C. 2967.021 assignment of error was pointedly ignored, State v. Bell
(Aug. 31, 2001), Belmont App. No. 00 BA 25, State v. Goode (Aug. 25, 2002), Cuyahoga App. No. 80525.
[23] State v. Conyers (1999), 87 Ohio St.3d at 250, citing Henrichv. Hoffman (1947), 148 Ohio St. 23, 27.
[24] It is noteworthy that under S.B. 2, for offenses committed after the effective date of the act, only offenders subject to maximum life terms of imprisonment are even eligible for parole. This would seem to supply the General Assembly with the reason to enact R.C. 2967.021, and retain the former parole eligibility for offenders convicted of offenses prior to the date S.B. 2 became law.
[25] State v. Conyers, supra.
[26] (Nov. 27, 2002), Cuyahoga App. No. 78919, 2002-Ohio-6478.
[27] Albright v. Payne (1885), 43 Ohio St. 8, 11.
[28] See State v. Tuttle (Jan. 30, 2003), Cuyahoga App. No. 80775,2003-Ohio-419.